UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE JAMES STREIBICH REVOCABLE TRUST OF 2002, et al., | |
| Plaintiffs, | No. 20 CV 2242 |
| v. | Judge Manish S. Shah |
| BROCK H. FLAGSTAD, et al., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Brock Flagstad successfully lobbied The James Streibich Revocable Trust of 2002 to invest $2,000,000 in his trading company, Folding Light, LLC. Flagstad repeatedly assured the Trust that its investment would be used solely for Folding Light's trading activity. Instead, the Trust says, Flagstad planned and executed a scheme to line his own pockets with the funds. The Trust, individually and derivatively on behalf of Folding Light, now sues Flagstad and several of his companies: Oxford Marketing Partners, LLC, Oxford Media, LLC, Oxford Tax Partners, LLC, Oxford FG, LLC, Oxford GP, LLC, Financial Freedom Advisors, LLC, and Cloverpoint Partners, LLC. Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)–(d), and Illinois law. Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, defendants' motion is granted.

I.   **Legal Standards**

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. The plaintiff must provide "more than labels" or "a formulaic recitation of a cause of action's elements," *Twombly*, 550 U.S. at 555, and the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562.

Plaintiffs alleging fraud must do so with particularity. Fed. R. Civ. P. 9(b). They must describe the "who, what, when, where, and how" of the fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)). Rule 9(b) applies to allegations of fraud in a civil RICO complaint. *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 587 n.56 (7th Cir. 2017). And, when bringing RICO claims against multiple defendants, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

## II. Facts

Brock Flagstad is the dominant member and controls the finances of many companies. [1] ¶¶ 15–17.[1] Flagstad's companies generally share the same accountants, law firms, addresses, and common business model. *Id.* ¶¶ 15–16. The corporate defendants, for example, are all Flagstad-controlled LLCs with the same Chicago address. *Id.* ¶¶ 6–12.

On or about May 2018, Flagstad approached James Streibich (the Trust's trustee) about investing in Folding Light. *Id.* ¶ 18. Flagstad was a member of Folding Light and acted as its Lead Manager. *Id.* ¶ 5. Flagstad told Streibich that Folding Light had developed an innovative proprietary trading platform for securities and crypto-based currencies. *Id.* ¶ 18; [35] at 1. Flagstad claimed that "back testing" of Folding Light's platform had already shown significant returns. [1] ¶ 18; [35] at 2–3. But, Flagstad insisted, the Trust's capital would be critical to help Folding Light engage in live trading, demonstrate actual returns, establish its viability to other investors, and leverage its trading capital. [1] ¶¶ 1, 18. Flagstad told Streibich that in exchange for a $2,000,000 trading capital investment, the Trust would gain a preferred interest in Folding Light. *Id.* ¶ 19. When Streibich agreed to these terms, Flagstad again affirmed that the funds would be used only for trading purposes. *Id.* ¶ 20. The Trust invested $2,000,000 in May 2018 and received a membership interest in the form of preferred capital in Folding Light. *Id.*

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint [1] and plaintiffs' opposition to the motion to dismiss [35].

3

Two weeks after the Trust invested its capital, Flagstad began transferring money from Folding Light's account to himself and one of his companies, Financial Freedom Advisors. *Id.* ¶ 21. Over the next couple months, Flagstad transferred hundreds of thousands of dollars from Folding Light to himself and FFA. *Id.* Folding Light's trading team left to start a competing company in fall of 2018. *Id.* Litigation between Folding Light and the departed trading team members revealed Flagstad's conversion of funds; the traders claimed that Flagstad converted over $340,000 from Folding Light to FFA. *Id.*

The Trust asked Flagstad about the claim, but he denied converting funds. *Id.* ¶ 22. And, with Folding Light's trading operations at a standstill following the trading team's departure, Flagstad approached Streibich about establishing a $200,000 revolving credit line with Folding Light, and then loaning this amount to another Flagstad company, Oxford Marketing Partners. *Id.*; [35] at 3. Streibich agreed to loan the money to Oxford Marketing plus interest, payable monthly to Folding Light. Flagstad made the first four monthly payments but has not made another or returned the principal to Folding Light. [1] ¶ 22. Instead, the funds were allegedly used for Oxford Marketing and Flagstad's personal benefit. *Id.*

By summer of 2019, Folding Light was no longer operational. *Id.* ¶ 23. Flagstad moved from Chicago to Sea Island, Georgia, and repeatedly rebuffed the Trust's requests to provide Folding Light's financial information, which he controlled. *Id.* ¶¶ 23, 25. When Flagstad continued to stonewall the Trust, Streibich sought and obtained partial account information from one of Folding Light's banks. *Id.* ¶ 26. The

4

records showed that, from June 2019 until February 2020, Folding Light made nineteen separate transfers—totaling just over $849,000—into bank accounts controlled by Flagstad. *Id.* ¶¶ 26–27, 41. All of the transfers were made without notifying Folding Light's members or management committee, and without seeking the Trust's consent to a related-party transaction (as Flagstad had done with the revolving credit line). *Id.* ¶ 26. Flagstad may have created phony invoices and expense records to substantiate these transfers. *Id.* ¶ 25. And as recently as January 2020, Flagstad's attorney continued to assure Streibich that the Trust's capital was to be used only for trading purposes. *Id.* ¶ 19. All the while, these funds were being funneled through Flagstad's Oxford companies, FFA, and Cloverpoint, and back into Flagstad's pockets to support his extravagant lifestyle. *Id.* ¶¶ 24, 28, 41.

The complaint claims that Flagstad and the corporate defendants collectively agreed to commit, and subsequently committed, a pattern of racketeering activity to defraud Plaintiffs and other unknown victims. *Id.* ¶¶ 43, 47. Plaintiffs invoke RICO and RICO conspiracy, 18 U.S.C. § 1962(c)–(d) (Count I & II). *Id.* ¶¶ 29–48. Plaintiffs also bring five state law claims: common law fraud (Count III), conversion/theft (Count IV), breach of fiduciary duty (Count V), breach of contract (Count VI), civil conspiracy (Count VII), and a demand for an accounting (Count VIII). *Id.* ¶¶ 49–101.

### III. Analysis

#### A. Racketeer Influenced & Corrupt Organizations Act

Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in

5

the conduct of such enterprise's affairs through a pattern of racketeering activity." To state a § 1962(c) claim, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Menzies*, 943 F.3d at 336 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97 (1985)). Simply alleging the above elements in a "boilerplate fashion" will not do; a plaintiff must "allege sufficient facts to support each element." *Goren*, 156 F.3d at 727.

Plaintiffs argue that defendants devised and executed a fraudulent racketeering scheme: Flagstad solicited millions of dollars for Folding Light based on false promises; he then worked with the corporate defendants to unlawfully siphon funds for his own personal use and benefit. Plaintiffs have failed, however, to plead enough to support the elements of a substantive RICO claim.

    *1.*    *Enterprise*

RICO defines an enterprise as any individual or legal entity (including any partnership, corporation, or association), or any group of individuals "associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The purpose must be "a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

A plaintiff must also "identify a 'person'—i.e. the defendant—that is distinct from the RICO enterprise." *United Food & Commercial Workers Unions & Employers*

6

*Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). A "person" may be a natural person or an entity "capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The plaintiff must show that each RICO defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."). An enterprise must be more than a group of associated businesses that operated in concert under one person's control, and "naming of a string of entities does not allege adequately an enterprise." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645–46 (7th Cir. 1995).

Plaintiffs fail to identify a RICO enterprise distinct from a person. The Trust alleges that Flagstad and the corporate defendants constitute a RICO enterprise because "their association furnished a vehicle for the commission of at least two predicate acts of racketeering activity." [1] ¶¶ 32–33. This conclusory allegation—showing only that defendants wanted to commit crimes—is bereft of any suggestion of an enterprise's separate existence and fails to separate the enterprise from the predicate acts. Furnishing a vehicle to advance defendants' self-interests is not a purpose that gives separate existence to an enterprise. The Trust argues that the purpose of the enterprise was "to solicit millions of dollars ... with the promise of rapid growth and above market returns, with the goal of siphoning funds" for "Flagstad's personal benefit." [35] at 6, 8. This is not a purpose on behalf of the association-in-fact enterprise distinct from the individual defendants' motives. Rather, it shows

7

"only that the defendants perpetrating the fraud ... were conducting their own (and each other's) affairs," not the affairs of an enterprise distinct from a person. *Richmond*, 52 F.3d at 646. There is no allegation that the corporate defendants "somehow made it easier to commit or conceal the fraud." *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998). And nothing in the complaint reveals how "actions were undertaken on behalf of the *enterprise*" and not by defendants' "in their individual capacities, to advance their individual self-interests." *United Food & Commercial Workers*, 719 F.3d at 854. Plaintiffs have thus failed to allege that each defendant was conducting the affairs of an entity distinct from a person. *See id.* at 853–54 (the enterprise must be distinct from the defendant).

    2.  Conduct

To satisfy RICO's conduct element, a plaintiff must show that each defendant "participated in the operation or management of the enterprise itself" and played "some part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179, 183; *Goren*, 156 F.3d at 727. RICO liability will not attach for mere association with an enterprise; rather, one must "somehow operate or manage the enterprise." *Brouwer v. Raffensperger, Hughes & Co.,* 199 F.3d 961, 966 (7th Cir. 2000).

The complaint does not allege facts that raise a reasonable inference that anyone other than Flagstad managed or operated anything. It merely recites the elements of the "operation or management" test and alleges that each defendant "exerted control over the Enterprise, and participated directly or indirectly in the operation and management of the affairs of the Enterprise." [1] ¶ 34. The closest

8

plaintiffs come to alleging RICO conduct are their claims that Flagstad transferred $340,000 to FFA from Folding Light, and that Oxford Marketing remains on the hook to Folding Light for the $200,000 loan that Flagstad procured. [1] ¶¶ 21–22. Even here, however, there is nothing to suggest that either FFA or Oxford Marketing were anything more than Flagstad's pass-through vehicles to transfer funds to himself. As for the remaining corporate defendants, the complaint contains no specific factual allegations of any conduct by Oxford Media, Oxford Tax, Oxford FG, Oxford GP, or Cloverpoint. In short, even if plaintiffs had sufficiently alleged an enterprise, they have not established that any defendant other than Flagstad engaged in the type of conduct necessary for substantive RICO liability to attach.

### 3. *Pattern of Racketeering Activity*

A "pattern of racketeering activity" requires "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). RICO predicate offenses include mail and wire fraud, 18 U.S.C. §§ 1341, 1343, and the interstate transportation of stolen property, 18 U.S.C. § 2314. 18 U.S.C. § 1961(1)(B). To establish a pattern of such activity, a plaintiff must show a "continuity plus relationship," meaning "a relationship between the predicate acts as well as a threat of continuing activity." *Menzies*, 943 F.3d at 337 (quoting *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011)). Plaintiffs assert an open-ended pattern of continuity. [35] at 8, 10. To determine whether an open-ended pattern of continuity exists, courts focus "not on what acts occurred in the past but on whether a concrete threat remains for the conduct to continue moving forward." *Menzies* 943 F.3d at 337. A plaintiff may

establish open-ended continuity by showing that "a defendant's actions pose a specific threat of repetition; that the predicate acts form part of the defendant's ongoing and regular way of doing business; or that the defendant operates a long-term association for criminal purposes." *Id.*

Moreover, when alleging predicate acts of fraud, plaintiffs' "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In other words, Rule 9(b) requires a plaintiff to provide "'precision and some measure of substantiation' to each fraud allegation." *Menzies*, 943 F.3d at 338 (quoting *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)). Rule 9(b) applies when a RICO plaintiff alleges predicate acts of mail fraud, wire fraud, and interstate transportation of stolen property (when the funds at issue are alleged to have been procured by fraud). *See Menzies*, 943 F.3d at 338; *Perlman v. Zell*, 938 F.Supp. 1327, 1349 (N.D. Ill. 1996).

The Trust provides specific allegations of fraud against only Flagstad. It claims that in May 2018, Flagstad falsely told Streibich that the Trust's investment in Folding Light would be used only for trading purposes. [1] ¶¶ 18–20. The Trust alleges that despite Flagstad's repeated reassurances, he began siphoning funds from Folding Light for his own personal benefit just weeks after securing the Trust's investment. *Id.* ¶¶ 19–21. The complaint provides partial banking records showing hundreds of thousands of dollars in unauthorized transfers from Folding Light to accounts allegedly controlled by Flagstad. *Id.* ¶¶ 26–27. These details are sufficiently specific at the pleading stage—even under Rule 9(b)'s heightened requirements—to

allege that Flagstad used interstate wire transfers to further a scheme to defraud plaintiffs and to transport stolen property.

But the Trust has not sufficiently pleaded that any corporate defendant played any role in any predicate act. A RICO plaintiff alleging predicate acts of fraud must "plead facts sufficient to notify each defendant of his alleged participation" in the fraudulent scheme. *Goren*, 156 F.3d at 726; *see also Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 77–78 (7th Cir. 1994). Here, with respect to the corporate defendants, the Trust alleges merely that the "mails and wires were used on numerous occasions in furtherance of" defendants' scheme, and "upon information and belief," that each defendant communicated with one another and with financial institutions to make unauthorized wire transfers from Folding Light to each defendant. [1] ¶¶ 38–40. These are conclusory allegations that "fail to specify the time, place and content" of any misrepresentations or action by the corporate defendants and "therefore fall short of the particularity demanded by Rule 9(b)." *Goren*, 156 F.3d at 730. Plaintiffs cannot simply treat "all the defendants as one; such 'lumping together' of defendants is clearly insufficient to state a RICO claim under § 1962(c)." *Id*. In the absence of particular facts to put each corporate defendant on notice for its alleged involvement in the predicate acts, plaintiffs' allegations are insufficient to satisfy Rule 9(b)'s requirements.[2]

---

[2] In addition, allegations based on "information and belief" do not meet the particularity requirement of Rule 9(b), unless a plaintiff can show "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014) (quoting *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011)). The Trust claims that Flagstad wholly controls Folding Light's

The complaint has another problem applicable to all defendants: it fails to plausibly allege an open-ended pattern of continuity. That is, plaintiffs have not shown a threat of repetition or that the scheme alleged here is Flagstad and the corporate defendants' ordinary way of doing business. Plaintiffs argue otherwise: Flagstad's common business model is a continuing threat, they say, because he has and will continue to (1) start companies, (2) solicit millions of dollars in investment from "numerous prominent Chicago investors" based on false promises of high returns, and (3) siphon investment funds to outside accounts for personal use. [35] at 10–11. But a plaintiff's "conclusory allegations that 'defendants' also defrauded unidentified 'others' are not enough to plead the requisite pattern of fraud." *Goren*, 156 F.3d at 729. Nothing in the complaint suggests that Flagstad's "model" has or will affect anyone other than the Trust and Folding Light members. The complaint does not, for example, allege that Flagstad and his companies have targeted other specific investors with similar schemes. Without more, the complaint fails to allege an open-ended pattern of racketeering activity.

---

financial information and that information relating to additional victims of defendants' conduct is exclusively within the defendants' control. [1] ¶¶ 25, 39–40. But neither of these assertions establish that plaintiffs are unable to access facts showing the corporate defendants' role in the alleged fraudulent scheme. Nor has the Trust shown plausible grounds—aside from "information and belief"—for its suspicion that the corporate defendants' played a culpable role in the alleged mail and wire fraud. *See Pirelli*, 631 F.3d at 443 ("The grounds for the plaintiff's suspicions must make the allegations *plausible*, even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail.").

## B. RICO Conspiracy

Subsection (d) of RICO makes it unlawful to conspire to violate any of the substantive provisions of the statute (subsections (a), (b), or (c)). *See* 18 U.S.C. § 1962(d). To state a claim for RICO conspiracy, a plaintiff must show that: "(1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) that the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *DeGuelle*, 664 F.3d at 204 (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001)). An agreement to participate in the affairs of an enterprise is an agreement to knowingly facilitate the activities of those who are operating the enterprise in an illegal manner. *Frost Nat'l Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 869 (7th Cir. 2001). Accordingly, unlike the requirements of the "conduct" element to a substantive RICO offense, a RICO conspirator under subsection (d) "does not need to be an operator or manager" of the enterprise. *Brouwer*, 199 F.3d at 966.

As with the substantive RICO claim, the failure to plead an enterprise is a defect in the RICO conspiracy claim. The allegation of an agreement falls short too. The complaint alleges that Flagstad and the corporate defendants were involved in an ongoing RICO conspiracy because they "collectively joined in agreement and conspired with one another to commit at least two predicate acts of racketeering activity." [1] ¶ 47. Plaintiffs argue that, by "furnishing a vehicle for the commission of the predicate acts" and communicating with one another and financial institutions

13

to "effectuate unauthorized wire transfers," each defendants' participation in the alleged enterprise manifested an agreement to participate. [35] at 14–15.

Once the complaint's bare recitation of the legal standard is properly set aside, *see Iqbal*, 556 U.S. at 678, what remains fails to state a RICO conspiracy claim. The complaint contains no facts that raise a reasonable inference of an agreement. That is, neither the corporate defendants' use as pass-through vehicles, nor the conclusory allegation that each defendant communicated with one another, plausibly suggest that any defendant entered a RICO conspiracy. The central allegation is that Flagstad exercised control over the corporate defendants, and there is no allegation that some meeting of the minds occurred to achieve Flagstad's goals.

The RICO conspiracy claim is dismissed.

### C. State Law Claims

With the RICO counts dismissed, this court has discretionary jurisdiction over the supplemental state-law claims. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). A court may—but is not required to—decline to exercise supplemental jurisdiction over state-law claims upon dismissal of "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The presumption, however, is that when "the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

There is no federal interest in this remaining state-law dispute, so I decline to exercise supplemental jurisdiction over plaintiffs' state-law claims. The state-law claims are dismissed without prejudice.

### D. Leave to Amend

Plaintiffs request leave to amend the complaint. [35] at 16. Under Federal Rule of Civil Procedure 15(a)(2), a court should freely give leave to amend when justice so requires. Ordinarily, an initial dismissal for failure to state a claim should be without prejudice, and leave to amend should be freely given unless it is certain from the face of the complaint that any amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

Although the original complaint fails to allege facts that state plausible RICO claims, it is not certain from the face of the complaint that any amendment would be futile here. Plaintiffs have leave to amend the complaint.

### IV. Conclusion

Defendants' motion to dismiss [29] is granted. The complaint, [1], is dismissed without prejudice. Plaintiffs have leave to file an amended complaint by November 9, 2020. If an amended complaint is not filed, the dismissal of the federal claims will convert to a dismissal with prejudice and the clerk will enter a final judgment.

ENTER:

_/s/ Manish S. Shah_
Manish S. Shah
United States District Judge

Date: October 19, 2020